IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HJR EQUIPMENT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00224-RK |
| | ) |
| CITY OF KANSAS CITY, MISSOURI, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Plaintiff JHR Equipment, Inc., d/b/a Delta Wheel Truing Solutions, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5), and Defendant City of Kansas City, Missouri's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 24.) The motions are fully briefed. (Docs. 6, 23, 25, 26, 27, 29, 33, 34.) Additionally, the Court held oral argument and an evidentiary hearing on May 9, 2022. For the reasons explained below, because the Court finds Plaintiff's complaint does not establish federal question jurisdiction as to its state-law claim for judicial review pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013), and their progeny, Defendant's Motion to Dismiss for lack of subject matter jurisdiction (Doc. 24) is **GRANTED**, and this case is **DISMISSED without prejudice** for lack of subject matter jurisdiction.[1]

I.  **Background**

Plaintiff manufactures machines for use in the rail industry. (Doc. 1 at ¶ 4.) In particular, Plaintiff specializes in maintenance equipment for freight and passenger rail cars, including under-floor wheel truing machines that reprofile the wheels of the rail cars to ensure they maintain the required shape and specifications. (*Id.* at ¶¶ 11, 12.) Seven years ago, Plaintiff was awarded a contract by Defendant City of Kansas City, Missouri ("the City") for an above-floor wheel truing machine as part of the original Kansas City Streetcar Project. (*Id.* at ¶ 13.) Now the City is in the process of extending the Kansas City Streetcar ("Expansion Project"), and has received federal

---

[1] Because the Court finds it lacks subject matter jurisdiction, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5) is **DENIED as moot**.

grant funding from the United States Federal Transit Administration for the project. (*Id.* at ¶¶ 16, 18.)

On August 31, 2021, Kansas City Streetcar Constructors ("KCSC"), issued a Request for Quote ("RFQ") through the City's Plan Room website, seeking bids for the procurement of an under-floor wheel truing machine for the Expansion Project. (*Id.* at ¶¶ 19-21; Doc. 1-3 at 59-68.) The RFQ set out desired specifications for the wheel truing machine, including the "minimal acceptable standards of quality, features, performance, and construction," and included "an exact copy of the specifications and drawings" for a wheel truing machine manufactured by NSH USA Corporation ("NSH"), one of two primary companies – including Plaintiff – that manufactures under-floor wheel truing machines. (Doc. 1 at ¶¶ 22-23.)

The complaint alleges that Plaintiff was contacted on October 8, 2021, by a system engineer "for one of KCSC joint venture partners" to inquiry about Plaintiff's interest in bidding on the RFQ for the under-floor wheel truing machine. (*Id.* at ¶ 24.) Plaintiff's Director of Research and Development, Tim Coble, informed the system engineer that Plaintiff was not inclined to respond to the bid because it believed the City had already decided to purchase NSH's wheel truing machine. (*Id.* at ¶ 25.) The system engineer told Plaintiff the City had not already selected the NSH machine and that Plaintiff should bid on the RFQ. (*Id.* at ¶ 26.) Ultimately, Plaintiff did submit a bid on the RFQ for the under-floor wheel truing machine. (*Id.* at ¶ 27.)

The relevant "Instructions to Bidders" associated with the RFQ for the under-floor wheel truing machine stated that sealed bids would be secured by KCSC, and that the bids would be "reviewed for completeness and content" by a panel including "persons from the City, Engineer, and KCSC Project Management." (Doc. 1-5.) The instructions also stated "[t]he apparent lowest priced responsive and responsible quotation will be selected," and that the City and KCSC "will determine the lowest responsible bid." (*Id.*)

Only Plaintiff and NSH submitted bids for the under-floor wheel truing machine. (Doc. 1 at ¶¶ 32-35.) The City selected NSH's bid, despite that NSH's bid was $700,000 higher than Plaintiff's bid. (*Id.* at ¶¶ 33, 35, 56.)

After Plaintiff was notified on November 24, 2021, that its bid was not selected, it requested a written debriefing of the award decision from KCSC Senior Project Manager Aaron Adams. (*Id.* at ¶¶ 54, 57.) Mr. Adams refused Plaintiff's request by telephone on December 7, 2021, the day after Plaintiff submitted its request. (*Id.* at ¶ 58.) Plaintiff then submitted a written protest of the

award to Mr. Adams on the same day. (*Id.* at ¶ 59.) In a December 10, 2021 letter, Mr. Adams identified five areas in which Plaintiff's bid was not responsive to the RFQ, including its size, configuration, that it was not "fully automated," and that Plaintiff's machine "does not have the ability to meet the production rates in the specification." (*Id.* at ¶¶ 61, 62.) The letter also included "protest procedures" that included a five-day-deadline to appeal in writing to the City's director of general services, although the protest procedures did not include a deadline for a protest concerning the procurement award. (*Id.* at ¶¶ 64, 65, 68, ¶ 69; Doc. 1-13.)

Plaintiff submitted a supplemental protest to Mr. Adams on December 21, 2021, contesting the grounds of denial asserted in the December 10 letter. (*Id.* at ¶¶ 66, 67.) When Plaintiff did not receive a response from KCSC, Plaintiff filed an appeal with the City Director of General Services on January 6, 2022. (*Id.* at ¶ 70.) Plaintiff's counsel contacted the City Procurement Manager on January 23, 2022, after receiving no response from the City Director of General Services. (*Id.* at ¶ 71.) The City Procurement Manager informed Plaintiff's counsel the appeal had been received and KCSC would process the appeal on behalf of the City. (*Id.* at ¶ 72.)

On February 16, 2022, Mr. Adams (KCSC's Senior Project Manager) issued a letter denying Plaintiff's supplemental appeal. (*Id.* at ¶ 74.) The letter stated Plaintiff's appeal was untimely, having been filed more than five days after receiving of the protest denial, and also that Plaintiff's bid did not comply with the RFQ requirements. (*Id.* at ¶ 75.)

Plaintiff filed this lawsuit in federal court on April 4, 2022, seeking declaratory and injunctive relief under 28 U.S.C. § 2201, asserting a claim for judicial review under the Missouri Administrative Procedure Act ("MAPA"), § 536.150, RSMo. As best as can be discerned, Plaintiff alleges the procurement process and the City's selection of the winning bid for the under-floor wheel truing machine violated state and federal procurement laws and was therefore unlawful, and that the City's procurement process and bid-selection was otherwise arbitrary and capricious, unreasonable, and involved an abuse of discretion. Plaintiff seeks equitable relief, including: (1) declaratory judgment that the City violated state and federal procurement laws; (2) declaratory judgment that the federal grant funds may not be used for the procurement under 49 U.S.C. § 5325(h); (3) enjoining the City (or its agent KSCS) "from executing or performing a contract for the Project awarded pursuant to its flawed Procurement for the" under-floor wheel truing machine and "from entering into a contract with NSH for the Project and/or . . . from allowing NSH to

3

continue work on the Project"; and (4) requiring the City to cancel any contract award for the under-floor wheel truing machine.[2]

**II. Discussion**

As a preliminary matter, the City asserts a challenge to the Court's subject matter jurisdiction in both its response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and its Motion to Dismiss for lack of subject matter jurisdiction. As a threshold issue in any federal case, the Court must first consider whether it has subject matter jurisdiction.

Federal courts are courts of limited jurisdiction and cannot hear a claim unless specifically authorized by the Constitution or a federal statute. *Rasul v. Bush*, 542 U.S. 466, 489 (2002). "Subject matter jurisdiction refers to the court's power to decide a certain class of cases." *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). Dismissal of an action is appropriate if the court does not have subject matter jurisdiction. *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). Additionally, in the context of the City's Motion to Dismiss, Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a motion challenging the federal court's subject matter jurisdiction. In deciding a Rule 12(b)(1) motion, a district court is required to distinguish between a facial attack and a factual attack. *Croyle*, 908 F.3d at 380. "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "It is to be presumed that a cause lies outside [of the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

---

[2] At oral argument, Defendant expressed frustration with discerning Plaintiff's causes of action. Plaintiff responded by noting Defendant had not sought relief under Rule 12(b)(6) but rather had only argued lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiff's complaint included two counts: "Count I – Declaratory Judgment (28 U.S.C. § 2201)" and "Count II – Injunctive Relief (Mo. Rev. Stat. § 536.150.1)." Neither count clearly states a cause of action but only forms of relief. *See Riley v. U.S. Fire Ins. Co.*, No. 4:21-CV-0192-DGK, 2022 WL 390837, at *4 (W.D. Mo. Feb. 8, 2022) (§ 2201 is a form of relief, not a cause of action). Defendant also appeared to argue at oral argument for the first time that MAPA is only "procedural" and does not provide a cause action under state law. A cursory review of Missouri caselaw reveals, however, state courts generally view MAPA, particularly § 536.150, as an independent cause of action. *See, e.g.*, *Spurgeon v. Mo. Consol. Health Care Plan*, 481 S.W.3d 604, 608 (Mo. Ct. App. 2016) (finding trial court erred in dismissing petition for judicial review under § 536.150, finding "the facts alleged in the petition meet the elements of a recognized cause of action for judicial review of a non-contested case under Section 536.150"). Accordingly, the Court construes Plaintiff's complaint as asserting a claim for judicial review under MAPA, § 536.150.1, RSMo.

375, 377 (1994) (citations omitted).  The Court interprets the City's Motion to Dismiss for lack of subject matter jurisdiction as asserting a facial attack to Plaintiff's complaint.

"Generally speaking, a federal court's subject matter jurisdiction over a case must be based on either [a] federal question . . . or diversity jurisdiction." *Miller v. Clark*, No. 12-01453-CV-W-BP, 2013 WL 12156800, at *1 (W.D. Mo. June 14, 2013) (citations omitted).  In its complaint, Plaintiff asserts federal jurisdiction as arising under both federal question jurisdiction (28 U.S.C. § 1331) and diversity of citizenship jurisdiction (28 U.S.C. § 1332).  (Doc. 1 at ¶¶ 8, 9.)  Plaintiff has since made clear, however, it does not rely on diversity jurisdiction to establish federal subject matter jurisdiction in this case.  (Docs. 26 at 3 n. 1; 27 at 8 n.1.)  Therefore, the Court considers only whether federal question jurisdiction exists in this case pursuant to § 1331.

Under § 1331, federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  As the Supreme Court has recognized, "'[a] suit arises under the law that creates the cause of action,'" *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8-9 (1983) (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)).

As best as the Court can discern from Plaintiff's response to the City's subject-matter-jurisdiction challenge and from counsel's argument at the oral argument, it appears Plaintiff argues federal question jurisdiction is satisfied here because (1) its claim for declaratory judgment under 28 U.S.C. § 2201 rests on interpretation and application of federal procurement law and regulation inasmuch as it seeks a declaratory judgment that the City violated federal procurement law, and (2) its state-law claim substantially turns on the same issues of federal law, i.e., that the City violated otherwise applicable federal procurement law.  The Court addresses each in turn.

First, to the extent it appears Plaintiff argues federal question jurisdiction independently exists under 28 U.S.C. § 2201 in that its complaint seeks declaratory and injunctive relief that the City violated federal procurement law, this argument is without merit.  Codified at § 2201, the Declaratory Judgments Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

§ 2201(a).  It is well-established that "the Declaratory Judgements Act is not an independent source of federal authority" but rather "presupposes the existence of a judicially remediable right."

5

*Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (holding because no such "judicially remedial right" existed under the Trading with the Enemy Act under which the plaintiff sued the Attorney General for a return of proceeds of certain property, the district court lacked subject matter jurisdiction). In other words, federal courts have recognized that § 2201 "is procedural in that it enlarges the range of remedies available in federal court," but does not otherwise provide or extend federal jurisdiction. *Kulkarni v. Wolf*, 503 F. Supp. 3d 908, 922 (W.D. Mo. 2020) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950)); *see also* § 2201(a) (authorizing declaratory relief "[i]n a case of actual controversy within [the court's] jurisdiction").

It follows, then, as district courts in this circuit have generally held, federal subject matter jurisdiction exists in a case seeking declaratory relief under § 2201 only when a "private right of action underl[ies] [the] declaratory judgment claim." *Heatland Med., LLC v. Express Scripts, LLC*, No. 4:17-CV-02873 JAR, 2018 WL 6831164, at *2 (E.D. Mo. Dec. 27, 2018) (citing *Midland Farms, LLC v. U.S. Dep't of Agric.*, 35 F. Supp. 3d 1056, 1065 (D.S.D. 2014); *Jones v. Hobbs*, 745 F. Supp. 2d 886, 892 (E.D. Ark. 2010); *Johnson v. Parker Hughes Clinics*, No. 04-4130 PAM/RLE, 2005 WL 102968, at *2 (D. Minn. Jan. 13, 2005)); *Hillsboro Dental, LLC v. Hartford Cas. Ins., Co.*, No. 410-CV-271 (CEJ), 2010 WL 5184956, at *3 (E.D. Mo. Dec. 5, 2010) (finding no federal question jurisdiction in declaratory judgment action to the extent HIPPA does not create a private cause of action).

Here, Plaintiff has not substantively argued in briefing or at oral argument that federal procurement law establishes a private right of action for violation of 49 U.S.C. § 5325(a) or accompanying federal regulations, or to otherwise somehow enforce § 5325(h)'s prohibition on the use of federal grant funds "to support a procurement that uses an exclusionary or discriminatory specification." *See also Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action," but Congress must have "intended to create the private right of action asserted").[3] Instead, Plaintiff argues the Court has federal subject matter jurisdiction under its

---

[3] At most, Plaintiff appears to rely on a broad reading of the Eight Circuit's decision in *Gaming World International, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840 (8th Cir. 2003), that federal question jurisdiction exists "when 'a declaratory judgment action requires resolution of an issue of federal law . . .'" (Doc. 27 at 4 (quoting *Gaming World*).) This argument is not persuasive. Because § 2201 does not itself provide a cause of action or a basis for federal question jurisdiction, *see, e.g.*, *Riley*, 2022 WL 390837, at *4, some underlying "judicially remedial right" whether under statute or a common law claim, for instance, is required. In *Gaming World*, the dispute concerned a gaming contract with a federally

6

state-law claim for judicial review pursuant to *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013).

In *Grable*, the Supreme Court set forth the standard for when federal question jurisdiction may otherwise exist in a non-diversity action setting forth state-law claims: federal jurisdiction exists as to a state-law claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314; *see Gunn*, 568 U.S. at 258. *Grable* and *Gunn* thus provide a second avenue for which a claim may "arise under" federal law to establish federal subject matter jurisdiction under § 1331 other than a claim asserted under a federal statute. As the Supreme Court has explained, however, this avenue for federal "arising under" jurisdiction for a state-law claim applies only to a "special and small category" of cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

Fundamentally, this small avenue for federal jurisdiction as to state-law claims is based upon "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify result to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. "When all four of [the *Grable* and *Gunn* requirements] are met, federal

---

recognized Indian tribe otherwise governed by federal law that provided the necessary backdrop for declaratory relief under § 2201.

Additionally, at oral argument, Plaintiff referenced an earlier Eighth Circuit opinion in *City of Independence, Missouri v. Bond*, 756 F.2d 615 (8th Cir. 1985), as holding that federal question jurisdiction exists in a declaratory judgment action when resolution of the case relies on "construction of a federal statute." *Id.* at 619. In that case, the City of Independence filed suit against the Missouri Governor after the Governor refused to certify appointments made by the City to a local industry council as provided for under federal law. The case turned on the Job Training Partnership Act that established local industry councils with members to be appointed by local government and certified by the governor of the state. *See id.* at 616-17. The City sought declaratory judgment that the appointments it made to the local industry council complied with the Job Training Partnership Act and that the appointments should therefore be certified by the Governor. *Id.* at 616. The Eighth Circuit concluded federal question jurisdiction existed because the controversy implicated (1) the City's "rights granted to it by federal statute," and (2) the power of the Governor under the federal statute. *Id.* at 618. Nothing in *Bond* suggests, as Plaintiff argues, § 2201 independently supports federal question jurisdiction, but rather *Bond* – although predating *Grable* and *Gunn* – applied a similar framework recognizing federal jurisdiction: "Cases that involve a genuine controversy regarding the construction of a federal law raise a federal question sufficient to confer jurisdiction under 28 U.S.C. § 1331." *Id.* at 618 (collecting cases). At the core, Plaintiff does not explain how the underlying dispute in this case is similar to the underlying dispute in *Bond* that was fundamentally based, as the Eighth Circuit explained in *Bond*, on the plaintiff's rights as a governmental entity expressly granted it by federal statute.

jurisdiction is proper." *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (citation omitted); *accord Gunn*, 568 U.S. at 258 (federal jurisdiction is proper even to a state-law claim when a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress").

Since *Grable*, the Supreme Court has recognized that the "contours of this slim category" of cases where federal jurisdiction exists in a case asserting only state-law claims are somewhat ambiguous and difficult to discern. *See Gunn*, 568 U.S. at 258. To determine whether Plaintiff's case falls within the *Grable* and *Gunn* framework, the Court first turns to the controlling caselaw, including *Grable* and its progeny.

First, in the leading *Grable* case, the Supreme Court found it had federal question jurisdiction in a state-law quiet title action. The Court concluded the quiet title claim "arose under" federal law because it turned on the interpretation, meaning, and application of a federal tax provision. In *Grable*, the IRS seized property belonging to the plaintiff and later sold the property to the respondent. *Id.* at 310. Despite having received actual notice prior to the sale of the property, the plaintiff filed a quiet title action in state court five years later "claiming that [respondent]'s record title was invalid because the IRS had failed to notify [plaintiff] of its seizure of the property in the exact manner required by [26 U.S.C.] § 6335(a)." *Id.* at 311. The Supreme Court ultimately found the case was properly removed to federal court pursuant to "arising under" federal question jurisdiction because the state-law quiet title action was wholly "premised . . . on a failure by the IRS to give [plaintiff] adequate notice, as defined by federal law." *Id.* at 314-15. Indeed, the Court recognized that whether the IRS gave proper notice required by § 6335(a) was both an "essential element of [plaintiff's] quiet title claim" and the sole "legal or factual issue contested in the case." *Id.* at 315. Additionally, the Court recognized, "[t]he meaning of the federal tax provision," specifically whether service of the required notice by the IRS requires personal service or if service by certified mail is sufficient, "is an important issue of federal law that sensibly belongs in federal court," and that the federal government (the IRS) "has a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* Finally, the Court recognized "it will be the rare state title case that raises a contested matter of federal law" such that "federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

8

One year after *Grable*, the Supreme Court refined the contours of this small category of federal "arising under" jurisdiction in *Empire*. *Empire* raised the question whether federal jurisdiction under *Grable* extends to a state-law tort action brought by a health insurance carrier seeking reimbursement of medical benefits paid prior to a settlement in a state tort action with the beneficiary's estate and the parties alleged to have caused the beneficiary's injuries. Specifically, the insurer filed suit in federal court alleging the beneficiary's estate had breached the reimbursement provision of the underlying health insurance plan. *Id.* at 687-88. Ultimately, the Supreme Court rejected the insurer's claim federal jurisdiction is satisfied under *Grable*. The Court reasoned *Empire* "does not resemble" *Grable* because: the reimbursement claim in *Empire* "was triggered . . . by the settlement of a personal-injury action launched in state court," rather than by any action of the federal government, and "the bottom-line practical issue is the share of that settlement properly payable to [the insurer]," an inherently "fact-bound and situation-specific" claim. *Id.* at 700-01. The Court rejected the interest of the federal government as involving a federal health insurance plan for a federal employee, finding this interest insufficient to "warrant turning into a discrete and costly 'federal case' an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation." *Id.* at 701.

Shortly thereafter, in *Pet Quarters, Inc. v. Depository Trust and Clearing Corp.*, 559 F.3d 772 (8th Cir. 2009), the Eighth Circuit applied *Grable* and *Empire* to find sufficient "arising under" federal question jurisdiction for a state-law antitrust claim that a "Stock Borrow Program" created and operated with the approval of the Securities and Exchange Commission was anticompetitive. Specifically, the Eighth Circuit found federal jurisdiction in *Pet Quarters* because the state-law antitrust claim "directly implicates actions taken by the Commission in approving the creation of the [program] and the rules governing it," and "[r]esolution of this dispute would control the outcome in numerous cases." *Id.* at 799.

As *Empire* was to *Grable*, however, a few months after it decided *Pet Quarters*, the Eighth Circuit decided *Central Iowa Power Co-op v. Midwest Independent Transmission System Operator, Inc.*, 561 F.3d 904 (8th Cir. 2009) ("CIPC"), finding federal question jurisdiction was not satisfied for a state-law claim. In *CIPC*, the plaintiff argued federal question jurisdiction existed as to its state-law claims for breach of contract, unjust enrichment, trespass, and conversion because resolution of these claims "necessarily depend on the resolution of whether the [Operation

9

& Transmission Agreement ("O&T Agreement")[4]] was violated." Nonetheless, the Eighth Circuit found no federal question jurisdiction because the *CIPC* plaintiff "need not establish a violation of the [O&T Agreement] to succeed in proving its state law claims," and therefore "the adjudication of [plaintiff]'s state law claims does not necessarily depend on the resolution of a substantial question of federal law." *Id.* at 919. Ultimately, the Eighth Circuit found in that case the state-law claims did not require plaintiff to prove the O&T Agreement was violated because, ultimately, given the nature of the dispute and the state law claims, the plaintiff "can succeed on its [breach of contract] claims independent of the O&T Agreement," and the O&T Agreement "has no bearing" on the elements of the tort claims. *Id.* at 914. The court also recognized, to the extent the state court would consider the O&T Agreement in adjudicating the state-law claims, doing so did not disturb the balance of judicial responsibilities where the state court could adequately "analyze the plain language of the . . . contract – a bread-and-butter state court issue." *Id.*

In 2013, the Supreme Court issued its second often-cited opinion within this small jurisdictional realm, *Gunn*. Similar to *Empire*, the Supreme Court further refined the outer limits of federal jurisdiction under *Grable* in *Gunn*. Specifically, in *Gunn*, the Supreme Court declined to find federal jurisdiction as to a state-law claim for legal malpractice based on an alleged error in a federal patent case. Although the Supreme Court recognized resolution or application of federal patent law was both "necessary" to plaintiff's legal malpractice case and "actually disputed," the Court ultimately concluded the federal issue "is not substantial in the relevant sense." *Id.* at 258-60.

The Court found the federal issue was not "substantial" for purposes of "arising under" federal question jurisdiction because whatever the result or resolution of the federal patent law issue, because the case was ultimately a legal malpractice case, the patent would remain invalid and no "real-world result" would otherwise exist regarding the federal issue implicated in the case. *Id.* at 261-62. Similarly, the Court reasoned the decision regarding federal patent law would not contribute to the development of a uniform body of patent law because it was confined to a legal malpractice cause of action and, thus, resolution of the federal question would not be "significant to the federal system as a whole." *Id.* at 262-63.

---

[4] In the world of public utilities and electrical power cooperatives, the Operation & Transmission Agreement "has the same legal force as a federal regulation because it is part of a [Federal Energy Regulatory Commission]-filed tariff." *CIPC*, 561 F.3d at 913.

For largely the same reasons, the Supreme Court also concluded the fourth factor was not satisfied:

> In this case, although the state courts must answer a question of patent law to resolve [plaintiff]'s legal malpractice claim, their answer will have no broader effects. It will not stand as binding precedent for any future patent claim; it will not even affect the validity of [plaintiff]'s patent. Accordingly, there is no "serious federal interest in claiming the advantages thought to be inherent in a federal forum."

*Id.* at 264 (citation omitted).

Similarly, in *Great Lakes Gas Transmission Limited Partnership v. Essar Steel Minnesota LLC*, 843 F.3d 325 (8th Cir. 2016), the Eighth Circuit – like the Supreme Court in *Gunn* – found federal question jurisdiction lacking under the *Grable* and *Gunn* framework considering the third and fourth factors – whether the federal issue raised in the state-law claim is substantial and whether federal courts can exercise jurisdiction without disturbing the federal-state balance approved by Congress. In *Great Lakes*, the plaintiff, a natural gas pipeline operator, brought a state-law breach-of-contract suit against a purchaser of natural gas with whom the plaintiff had entered an agreement that required the purchaser to pay the maximum rates and charges as reflected in the plaintiff's gas tariff on file with the Federal Energy Regulatory Commission. *Id.* at 327. On appeal, the Eighth Circuit considered whether the case satisfied the *Grable* and *Gunn* "arising under" jurisdiction framework to the extent the breach-of-contract action required the interpretation of the federal tariff (terms of which were incorporated by reference into the parties' contract). *See id.* at 332. First, the Eighth Circuit held the federal issue raised in the case was not "substantial in the relevant sense," because the contract would under its terms be interpreted according to state law and, additionally, "there is little national interest in having a federal court interpret tariff provisions if it will merely apply state law." *Id.* In other words, interpretation of the contract would "not have federal reverberation" and, the Eighth Circuit reasoned, "to the extent federal interests are implicated, the state court is competent to apply the language of the tariffs." *Id.* (citation and quotation marks omitted). Ultimately, the Eighth Circuit concluded the case was "far more similar to the 'fact-bound and situation-specific' dispute over the application of contract terms in *Empire* than it is to the interpretation of a federal statute posed in *Grable*." *Id.* at 333 (citation omitted).

Next, the *Great Lakes* Court also concluded *Grable*'s fourth requirement was not satisfied where the lack of a federal cause of action under the Natural Gas Act "serves as an 'important

11

clue' suggesting a congressionally approved balance *disfavoring* federal involvement," and "the presence of the exclusive jurisdiction provision [in the Natural Gas Act for violations of the law] indicates that Congress did *not* intend this particular type of case to end up in federal court, because exclusive jurisdiction over breach of contract cases" would disturb the balance of federal-state judicial responsibility warned against in *Grable*. *Id.* at 334 (quoting *Grable*, 545 U.S. at 318).

Finally, and most recently, the Eighth Circuit issued its opinion in *Wullschleger*, finding the *Grable* and *Gunn* jurisdiction rule was satisfied as to plaintiffs' state-law claims for unjust enrichment and antitrust violations. In *Wullschleger*, the plaintiffs filed a putative class action suit against two manufacturers of prescription pet food under the Missouri Merchandising Practices Act ("MMPA") and Missouri antitrust and unjust enrichment laws. In addition to money damages, the plaintiffs sought declaratory and injunctive relief. Looking to the plaintiffs' pleadings, the Eighth Circuit concluded their claims for unjust enrichment and antitrust violations were "premise[d] . . . on violations and interpretations of federal law" in manner in which *Grable* and *Gunn* was satisfied and the Court concluded federal question jurisdiction existed in that case. 953 F.3d at 522. Specifically, the Eighth Circuit reasoned:

> The complaint included no fewer than 20 paragraphs recounting the defendants' specific and coordinated conduct that plaintiffs contend occurred during the five years preceding the filing of the complaint. As evidence of coordination and conspiracy, plaintiffs explicitly claim that defendants violated the FDCA, were non-compliant with FDA guidance, and that their refusal to submit the prescription pet food to FDA review was improper. According to the plaintiffs' complaint, when confronted with a choice to continue non-compliance or submit to FDA review, the defendants "decided jointly" to continue their conspiracy and market the prescription pet food "in violation of federal and state law." Plaintiffs' dependence on federal law permeates the allegations such that the antitrust and unjust enrichment claims cannot be adjudicated without reliance on and explication of federal law.

*Id.* (internal record citations omitted). Additionally, the Eighth Circuit looked to the declaratory and injunctive relief that, it found, "necessarily requires the interpretation and application of federal law":

> After alleging violations of the FDCA throughout the complaint, plaintiffs request judgment: (1) "[f]inding, adjudging, and decreeing" that defendants have violated federal law; (2) enjoining defendants from engaging in further violations of federal law; and (3) estopping defendants from denying that prescription pet food is a "drug" and "enjoining Defendants to comply with all federal and Missouri provisions applicable to the manufacture of such drugs. . . ."

*Id.* (citations omitted). Accordingly, the Eighth Circuit concluded that *Grable* and *Gunn* "arising under" federal question jurisdiction was satisfied in that case.[5]

Turning to the case at hand, the Court must determine whether Plaintiff's state-law cause of action for judicial review of the City's procurement decision under MAPA falls within the "special and small category" of cases under *Grable* and *Gunn* to support the exercise of federal subject matter jurisdiction. The Court concludes it does not.

First, the Court considers whether Plaintiff's state-law claim for judicial review necessarily raises a federal issue. It is not readily apparent § 536.150.1, authorizing judicial review when an agency decision is "unlawful, unreasonable, arbitrary, or capricious, or involves an abuse of discretion" necessarily raises a federal issue. *See also Atlantic Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 n.4 (2020) (recognizing no *Grable* and *Gunn* "arising under" jurisdiction for state-law claims for trespass, nuisance, and strict-liability where "[n]o element of the landowners' state common law claims necessarily raises a federal issue"). Nevertheless, in *Wullschleger*, the Eighth Circuit (and to some extent the Supreme Court in *Gunn* by recognizing these first two factors were satisfied in the legal malpractice case) appeared to look beyond the bare elements of the state-law cause of action and consider how the plaintiffs structured or presented their case as a practical matter – i.e., how the plaintiffs set forth the cause of action and what the plaintiffs would be required to prove to win.

In *Wullschleger*, the Eighth Circuit concluded the plaintiffs' state-law claims for antitrust violations and unjust enrichment "cannot be adjudicated without reliance on and explication of federal law." An examination of that case reveals, however, the plaintiffs' state-law claims necessarily rested on allegations of conspiracy and coordination as to the violation of federal food and drug laws and thus, contrary to the claims in *CIPC,* as postured the plaintiffs could not "succeed on [their] claims independent of" the federal issue. 561 F.3d at 914 (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 817 (4th Cir. 2004) (en banc) ("[I]f the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331.")). Here, though, Plaintiff's claim seeking judicial review can be adjudicated without reliance on and explication of federal law. Indeed,

---

[5] Notably as to the *Wullschleger* plaintiffs' MMPA claim, the Eighth Circuit held that claim did not support *Grable* and *Gunn* "arising under" federal question jurisdiction simply because "[r]esolution . . . might not depend on federal law if the defendants' failure to submit the prescription pet food for FDA review arguably could be sufficient to prove deception under the MMPA." *Wullschleger*, 953 F.3d at 521.

13

Plaintiff alleges the procurement was unlawful under both federal and state laws (*see* Doc. 1 at ¶¶ 83-86), was arbitrary, unreasonable, and involved an abuse of discretion – claims that might well not depend on whether the City violated federal procurement law if, for instance, the City failed to follow its own protest protocol and/or own procurement procedures, or arbitrarily interpreted the RFQ's specifications, as Plaintiff alleges.

Even if Plaintiff's complaint did sufficiently demonstrate a federal issue was necessarily raised in its state-law claim seeking judicial review of the City's procurement actions for a local transportation project, the *Gable* and *Gunn* "arising under" jurisdiction framework requires more. *See Empire*, 547 U.S. at 701 ("*Grable* emphasized that it takes more than a federal element to open the 'arising under' door.") (citation and quotation marks omitted). The federal issue must also be substantial. In *Grable*, the federal issue was substantial because – existing as the sole legal and factual issue – the case turned on the validity of the IRS's action relating to the sale of a taxpayer's property, which in turn rests on the construction and interpretation – more than merely the application of – federal law. *See id.* at 700 (explaining the federal question in *Grable* was substantial because "[t]he dispute . . . centered on the action of a federal agency (IRS) and its compatibility with a federal statute"). In *Knox v. Mazuma Credit Union*, No. 15-0288-CV-W-ODS, 2015 WL 3407618 (W.D. Mo. May 27, 2015), a district court in the Western District found the federal issue whether defendant violated the Electronic Funds Transfer Act, thus supporting plaintiff's claim under the MMPA and for unjust enrichment, did not satisfy the *Grable* and *Gunn* "substantial" standard because that case lacked the "importance external to the suit at hand," a factor that was otherwise present in *Grable* that necessarily involved the construction and interpretation of a federal law regarding the IRS's responsibility to send proper notice under federal law regarding the sale of a person's property. *See id.* at *2.

Plaintiff argues the federal issues raised in this case – namely whether the City violated federal procurement law – is "substantial" as having a general "importance . . . to the federal system as a whole" to the extent it concerns federal monies that are intended to be spent within the parameters of federal procurement law. (Doc. 27 at 6-7.) The federal issue in this case, however, is not like the substantial federal issue that was present in *Grable* – an issue that would inform and implicate past and future actions taken by the federal government and the government's substantive responsibility. This case does not involve the federal government whatsoever. Instead, rather than the wide-ranging federal interest in *Grable* – as well as in *Pet Quarters*, where

14

Case 4:22-cv-00224-RK   Document 35   Filed 05/13/22   Page 14 of 16

"[r]esolution of this dispute would control the outcome in numerous cases" to the extent the claim implicated a particular program created and operated with the approval of the SEC, 559 F.3d at 779 – this case is much more limited in scope. Whether the City violated federal procurement law regarding this under-floor wheel truing procurement is a fact-bound and situation-specific inquiry that counsels against finding the federal issue is substantial for purposes of the *Grable* and *Gunn* "arising under" federal question jurisdiction. Indeed, it is more like the specific contract-interpretation issue in *Great Lakes*, the legal malpractice issue in *Gunn*, and the insurance-reimbursement claim in *Empire*. Moreover, this case does not involve the market-wide scheme of coordination and conspiracy to violate federal law underlying the state-law claims in *Wullschleger*. Rather, this case involves a single procurement by the City for a single local project. Plaintiff's argument that this case promotes "uniform standards across the country for how federal money is used" belies its claim here – that in procuring the under-floor wheel truing machine for the Expansion Project, the City violated federal and state procurement law and Plaintiff is entitled to judicial review of that decision to the extent it was arbitrary and capricious, unreasonable, and an abuse of discretion. As in *Empire*, this is the kind of highly fact- and situation-specific state-law claim that does not implicate a federal issue otherwise substantial in the relevant sense for which *Grable* and *Gunn* do not apply to establish federal question jurisdiction.

Finally, the Court considers whether allowing federal courts like this one to decide this state-law claim with the federal issues raised would disrupt the federal-state balance approved by Congress. In *Grable*, the Supreme Court found this factor was satisfied because only "the rare state title case" would raise a contested issue of federal law and therefore "federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." 545 U.S. at 315. In *CIPC*, the Eighth Circuit analyzed this factor from the other side – whether the state court's consideration of the interpretation of the agreement (having the force and effect of federal law) would "disturb[] the congressionally approved balance of federal and state judicial responsibilities," and ultimately concluded "we are confident in the adjudicating state court's ability to analyze the plain language of the private contract – a bread-and-butter state court issue." 561 F.3d at 914. So it is here.

A state court adjudicating Plaintiff's state-law claim seeking judicial review of the City's procurement of the under-floor wheel truing machine is certainly "competent to apply federal law, to the extent it is relevant." *Empire*, 547 U.S. at 701. Moreover, were Plaintiff's claim to give rise

15

to federal question jurisdiction in this case, *Grable* and *Gunn* would no longer serve as the limited exception but would provide a wide pathway to federal jurisdiction because a state-law claim seeking judicial review for "unlawful" agency action would give rise to a federal case any time a plaintiff alleges a state or local agency violated federal law. Finally, Plaintiff does not argue it has a federal cause of action under § 5325(a) or (h); nothing suggests state remedies for violation of federal procurement law would otherwise be preempted; and state courts, it would seem, have jurisdiction in a cause of action seeking judicial review of the decisions or acts of an agency within the state. *See Dorman v. Bayer Corp.*, No. 4:16CV601 HEA, 20161 WL 7033765, at *4 (E.D. Mo. Dec. 2, 2016) (collecting cases rejecting federal jurisdiction in state law products liability cases premised on violations of the Food, Drug and Cosmetic Act).

For all of these reasons, the Court concludes Plaintiff's complaint does not demonstrate this case seeking judicial review of an agency's action under state law fits within the "special and small category" of cases for which "arising under" federal jurisdiction otherwise exists for state-law claims, as set forth in *Grable* and *Gunn*.[6]

### III. Conclusion

Accordingly, for the reasons explained above and because Plaintiff does not rely on either diversity jurisdiction or a cause of action under 49 U.S.C. § 5325 or other sufficient federal statute, the Court lacks subject matter jurisdiction. Therefore, Defendant's Motion to Dismiss for lack of subject matter jurisdiction (Doc. 24) is **GRANTED**, and this case is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 13, 2022

---

[6] This order does not address possible remedies the federal government may have to the extent, as Plaintiff alleges, the grant of federal monies to the City of Kansas City concerning the Expansion Project requires the City to comply and/or ensure compliance with federal procurement laws and regulations, to the extent those laws and/or regulations were not followed in this procurement. Instead, the sole inquiry is whether Plaintiff's complaint, proceeding as a private entity, establishes federal subject matter jurisdiction under *Grable* and *Gunn*. In other words, this order does not implicate either the federal government's ability to pursue a proper remedy against the City to the extent permitted under the law or Plaintiff's ability, should it choose to do so, to pursue a proper remedy against the City in state court. This order only holds Plaintiff's complaint does not support federal question jurisdiction as falling within the special and small category of cases for which federal question jurisdiction exists as to a state-law claim.